**Marion B. ROBERTSON, Plaintiff-Appellant,**

v.

**Hazel Beck WEINHEIMER, Executrix of the Estate of Fred H. Beck, deceased, Defendant-Respondent.**

**No. 52155.**

Supreme Court of Missouri, Division No. 2.

Feb. 13, 1967.

Manion & Hawk and James E. Hawk, Jr., and E. A. O'Rourke, St. Louis, for appellant.

Robert E. Keaney, J. C. Jaeckel, Moser, Marsalek, Carpenter, Cleary & Jaeckel, St. Louis, for respondent.

TOM J. STUBBS, Special Judge.

Plaintiff seeks to recover $75,000.00 in damages because of personal injury and damage to property alleged to have resulted from the collision of two motor vehicles in the intersection of Jamieson and Marquette Avenues in the City of St. Louis, Missouri. At the conclusion of the plaintiff's evidence the trial court sustained defendant's motion for directed verdict. The question presented by this appeal is the sufficiency of the competent evidence to make a jury issue with respect to decedent's negligence. Fred H. Beck, driver of defendant vehicle died before this action was instituted.

■ Plaintiff was permitted to testify over timely objections, based upon the "Dead Man's" statute (Section 491.010 RSMo 1959, V.A.M.S.) that before the collision he was driving his automobile south on Jamieson Avenue in the center of three lanes for southbound traffic and continued in this lane into the Jamieson and Marquette intersection (where the collision occurred). In view of the objections the testimony was inadmissible and it will not be considered in our determination of the sufficiency of the evidence.

Jamieson Avenue extends north and south and is approximately 60 feet wide, containing three southbound and three northbound lanes for moving traffic separated by a concrete divider. Marquette Avenue extends east and west and intersects Jamieson. There are no traffic signs on Jamieson for the control of southbound vehicles, however there is a stop sign on Marquette for the control of westbound vehicles before they enter its intersection wtih Jamieson.

Patrolman Norbert Stuckenschneider of the City of St. Louis Police Department arrived at the accident intersection shortly after the accident had occurred on October 27, 1962 at about 9:50 a. m. He saw two automobiles "in the center of the street." Both were damaged. He talked with the plaintiff and with Fred Beck.

In response to the officer's questions, Mr. Beck said that he was westbound on Marquette and stopped at the intersection, glanced to his right and observed another car coming south on Jamieson. He said he thought he had enough time to cross the intersection and "continued on across and then he was involved in a collision in the intersection." Mr. Beck identified the plaintiff as the driver of the other car. Mr. Beck estimated his speed at the time of the impact at 20 miles an hour. "The distance of the accident" when "first noticed by him" was 20 feet and his speed at that time was 20 miles per hour. We interpret this latter testimony to have been intended and was understood to mean that Mr. Beck first noticed the danger of collision when his car was 20 feet from the point of impact and that his speed then was 20 miles per hour.

Plaintiff sustained damage as a direct result of the collision.

The violation of pleaded and proved ordinances of the City of St. Louis forms the basis of plaintiff's claim of actionable negligence. The Ordinances 46687 and 51234, as they apply here provide that "every driver" westbound on Marquette Avenue "shall stop" at the stop sign before entering the intersection of Jamieson and Marquette and shall "yield the right of way to drivers" on Jamieson Avenue "and shall not proceed through the intersection or into" Jamieson Avenue "until safe to do so."

 It is our view that a trial jury could well believe from the evidence adduced by plaintiff that Mr. Beck, driving an automobile westbound on Marquette brought it to a stop at the stop sign as commanded by the ordinance, saw the plaintiff's car approaching from the north, and then in direct violation of the ordinance failed to yield the right of way to plaintiff and drove into Jamieson Avenue and attempted to proceed through the intersection when it was not safe to do so and was thus negligent. Mr. Beck saw an approaching car and a fair inference from the evidence is that it was the plaintiff's automobile he saw. A collision did occur in the intersection. The fact of the collision demonstrates rather conclusively that it was not safe for Mr. Beck to drive his car into the intersection when he did.

In Herr v. Ruprecht, Mo.Sup., 331 S.W.2d 642 it is said:

"Defendant's statutory duty extended beyond stopping at the entrance to the intersection and giving preference to vehicles already in it. She was also required to yield the right of way to vehicles approaching the intersection so closely on the through highway as to constitute an immediate hazard. And defendant's duty to 'yield the right of way' existed not merely at the entrance and while she was stopped, but it continued with her into the intersection * * *."

Defendant says that Herr v. Ruprecht, supra, and similar appellate authority are not controlling here because defendant's duty in those cases was measured by Section 304.021 (4), RSMo 1959, V.A.M.S. relating to the construction of the phrase "an immediate hazard." If the ordinances we are concerned with here impose any different duty than Section 304.021 (4) supra, they impose a greater rather than lesser duty upon the defendant. The ordinance simply prohibits entry into the intersection until "it is safe to do so."

In our view the precise place in the intersection where the collision occurred is of no consequence in determining the issue presented here. Stopping distances are not involved.

The judgment is reversed and the cause is remanded.

All of the Judges concur.